IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NATHANIEL GREEN

    Petitioner,

v.

W. A. SHERROD, Warden,
and UNITED STATES
PAROLE COMMISSION,

    Respondents.                      Case No. 07-cv-304-DRH

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

### I. Introduction

Before the Court is a Report and Recommendations ("R&R") (Doc. 32), issued pursuant to **28 U.S.C. § 636(b)(1)(B)** by Magistrate Judge Proud, which recommends dismissing petitioner Nathaniel Green's ("Green" or "Petitioner") Petition for Writ of Habeas Corpus pursuant to **28 U.S.C. § 2241** (Doc. 2). Specifically, the R & R recommends a denial of the habeas petition, concluding that the United States Parole Commission's (the "Parole Commission" or "Commission") decision to decline a hearing examiner's recommendation of parole was not arbitrary and capricious. That view is shared by respondents W.A. Sherrod (the current

Warden at FCI-Greenville) and the U.S. Parole Commission (collectively, "Respondents") (Doc. 16).

The R&R was sent to the Parties, with a notice informing them of their right to appeal by way of filing objections by January 28, 2010.  In accordance with the notice, Petitioner filed timely objections to the R&R (Doc. 35).[1]  Because timely objections have been filed, this Court must undertake *de novo* review of the objected-to portions of the R&R.  **28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992)**.  The Court may "accept, reject, or modify the recommended decision." ***Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999)**.  In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues for which specific objection has been made.  ***Id***.  However, the Court need not conduct a *de novo* review of the findings of the R&R for which no objections have been made.  ***Thomas v. Arn*, 474 U.S. 140, 149-52 (1985)**.  Instead, the Court can simply adopt these findings.  For the reasons discussed herein, the Court adopts the findings and recommendations of the R & R.

---

[1] Respondents have not filed a Response to these Objections.

## II. Background

On June 26, 1981, Petitioner was sentenced to 100 years' imprisonment after being found guilty in federal court of kidnaping for the purpose of committing murder of 17-year-old Rhonda Michelle Gillihan, in violation of **18 U.S.C. § 1201(a)(1)**. He is currently serving his sentence at the Federal Correctional Institution in Greenville, Illinois ("FCI Greenville"). Petitioner both filed a direct appeal as well as a petition for collateral relief; both were denied (Doc. 2, p. 2).

On December 13, 1990, Petitioner had his initial hearing in front of hearing examiners for the U.S. Parole Commission (the "Commission"). Due to his severe nature of the offense of kidnaping with murder of the victim, Petitioner received a Severity Category Eight rating – the highest rating. He also qualified for a Salient Factor score of 4.[2] Commission guidelines for the above factors placed him in a range of 150 months or greater to be served before probation. At the time of his 1990 hearing, Petitioner had been in custody for 118 months. However, the Commission also noted that Petitioner's new criminal conduct occurring since incarceration[3] increased his aggregate Factor range to 162 months or greater to be

---

[2] The regulations indicate that this score "serves as an aid in determining the parole prognosis (potential risk of parole violation)." **28 C.F.R. § 2.20(e)**.

[3] These three disciplinary incidents occurred early on in Petitioner's incarceration. Two incidents were for possession and use of a small amounts of marijuana, approximately 23 years prior to his 2006 reconsideration hearing. The third incident occurred almost 16 years prior to that hearing, for assault on a prison chaplain. The charge arises from an incident in the dining hall where Petitioner got into a verbal altercation with the chaplain regarding the appropriate prayer time (before eating versus before entering dining hall). He states that he removed a sandwich from the lunch sack and lunged his hand forward like he was going to drop the sack when he accidentally brushed the chaplain's stomach. He was later informed that any contact of a negative nature by an inmate results in an assault charge (Doc. 2, Ex. A, P. 7).

served before reconsideration for parole. Lastly, the Commission found a further 48 months over the minimum guideline range was warranted due to the fact that Petitioner "committed an unprovoked murder of a victim. The victim was stabbed approximately 15 times and her head was beaten. Other abrasions were found on the victim's nude body, including indications of [Petitioner's] heel mark on her side" (Doc. 2, Ex. A, p. 1). Ultimately, the Commission denied him parole, but allowed for a reconsideration hearing in fifteen years (*Id*. at pp. 1-9). Pursuant to statutory requirements, Petitioner continued to receive interim parole hearings.

On January 24, 2006, Petitioner had his fifteen-year reconsideration parole hearing. Since his initial 1990 hearing, despite the statutory interim hearings, there had been no adjustments made to that decision – Petitioner remained in a Severity Category Eight "because the offense behavior actually involved murder, even though the conviction was kidnaping," with a Salient Factor Score of 4 (Doc. 2, Ex. B, p. 1). The hearing examiner conducted a *de novo* review of Petitioner's institutional record, taking into account his following accomplishments and noting that he qualified for superior program achievement ("SPA"):[4]

- a long, outstanding work record in UNICOR

- completion of his Associates Science Degree

- taking additional college courses so that he is within 20 credit hours of obtaining a Bachelor's Degree

---

[4] The hearing examiner explained that while SPA cannot reduce Factor in federal cases, it can be used to reduce a parole decision. It should be considered when deciding the total time for an inmate to serve.

- completion of additional programs in Business Law, Criminal Personality, Substance Abuse Counseling and Real Estate

- volunteering to work in Suicide Watch program and the Religious program

- receipt of a letter of commendation from the Bureau of Prisons Staff for his reaction to a fire in UNICOR in May 1991, where Petitioner was given credit for preventing a considerable loss of property and possibly life

- receipt of a letter of commendation from the Warden at FCI Pekin in 1995 for his work with the Islamic Community among the inmate population

(Doc. 2, Ex. B, p. 3).

The hearing examiner also heard statements from Petitioner, Petitioner's sister and the victim's mother. According to the Hearing Summary, Petitioner has always admitted to committing the crime and stated that he accepted responsibility for his actions and feels terrible about it every day – that it is something he will never get over (*Id*. at p. 1).[5] However, Petitioner stated at the reconsideration hearing that he believed he is a very different person than he was at age 23 when he committed

---

[5] During his 2006 reconsideration for parole hearing, Petitioner gave the following version of events regarding the kidnaping and murder of Rhonda Michelle Gillihan: Petitioner attended a party at an apartment complex. The victim was also at the party. While at the party, several other men made sexual advances and also derogatory comments towards the victim, and Petitioner joined in. He stated that he made the victim angry, and she stormed out of the party and he followed her outside, intending to apologize. During an ensuing verbal confrontation, Petitioner stated that the victim stabbed him in the arm with her pocket knife. He tried to take the knife away and she cut him again with it. At that point, he grabbed the knife away from her and lost it – stabbing her repeatedly 15 times. After the attack, the victim remained conscious and asked Petitioner to take her to the hospital. He stated that he drove her in her car, planning to take her to a hospital but that he died on the way. Because he was scared and did not know what to do at that point, Petitioner explained that he dumped her body (*Id*. at pp. 1-2). In his 1990 hearing, Petitioner further stated that he took the victim's clothes off beforehand and threw them away, because he was not thinking clearly. He then dropped her body off somewhere in East St. Louis, Illinois (Doc. 2. Ex. A, p. 6).

this crime (*Id.* at p. 4). Petitioner's sister stated that she had observed her brother over his years of incarceration and that he has "matured and grown up in prison" (*Id.* at p. 1). She did not believe him to be the same person that he was when the crime occurred. She indicated that if released on parole, Petitioner would reside with her in St. Louis, Missouri (*Id.*). The victim's mother gave her statement, remaining strongly opposed to Petitioner's release from prison (*Id.* at p. 4).

The hearing examiner found the circumstances of the crime to be "somewhat unusual" in that the Presentence Report comported with Petitioner's consistent position that he never planned to murder the victim or commit any crime on the night of the incident. Thus, the examiner concluded that Petitioner "reacted to the situation with extreme anger and committed this brutal offense in the heat of the moment" (*Id.*). Although acknowledging that the statement given by the mother of the victim regarding the tremendous loss suffered as a result of Petitioner's actions was strong and impressionable, the hearing examiner found that "the objections of a victim family member should only go so far in determining a parole decision" and that the "Commission still has a responsibility to follow the guidelines and be consistent as well as fair" (*Id.*). Therefore, the hearing examiner found that Petitioner should be paroled after serving 26 years of his 100-year term of imprisonment,[6] as "service of 26 years is consistent with how similar cases are handled by the Commission and it is viewed as being adequate punishment and accountability for

---

[6] At that point, Petitioner had already been incarcerated for 25 years.

this offense" (*Id.*).  The hearing examiner further stated that his recommendation took into account Petitioner's SPA, explaining that without it, he would have recommended Petitioner serve 28 years (*Id.*).  Accordingly, the hearing examiner set Petitioner's recommended parole date for February 25, 2007.

A parole hearing examiner's recommendation must be approved by the Parole Commission.  In Petitioner's case, the recommendation for parole after 26 years of service was denied.  Instead, upon review of the hearing examiner's recommendation, two of the Parole Commissioners disagreed and instead ruled to continue the decision to expiration, with the next interim hearing slotted for January 2008 (Doc. 2, Ex. B, pp., 6-7; Ex. C, p. 1).  The Parole Commission provided the following reasons for denying the hearing examiner's recommendation:

> After review of all relevant factors and information presented, a decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating case factors: You committed an unprovoked murder of a victim, the victim was stabbed approximately 15 times and her head was beaten.  Other abrasions were found on the victim's nude body, including indication of your heel mark on her side.

(Doc. 2, Ex. C, p. 1.)

Petitioner then appealed the Parole Commission's decision to the National Appeals Board.  The Board affirmed the denial of parole, finding that the Commission did follow correct procedures by conducting his fifteen-year reconsideration hearing as a *de novo* hearing, pursuant to **28 C.F.R. § 2.14(c)**, further stating as follows:

> [I]t was proper for the Commission to consider your entire record,

> including incidents which "pre-dated" your fifteen-year reconsideration. Your claim that the Commission erred in not adopting the recommendation of the hearing examiner that you be paroled is also without merit. The Commissioners are not required to adopt the hearing examiner's recommendation. In your case, the Commissioner declined to adopt that recommendation, and a second Commissioner agreed with the first. This procedure complied with **28 C.F.R. § 2.24(a)**. The Commission was aware of your institutional accomplishments, but determined that these were outweighed by the severity of your offense of conviction.

(Doc. 2, Ex. D.)

Petitioner then filed the instant petition for writ of habeas corpus, pursuant to **28 U.S.C. § 2241** (Doc. 2), asserting the following arguments: (1) the Parole Commission's failure to adopt the hearing examiner's recommendation of parole was arbitrary and capricious, as it lacked no rational basis; (2) the Parole Commission abused its discretion when it used the same aggravating factors to continue Petitioner beyond his prescribed parole guideline release date that it also used to establish his Category Eight severity rating (known as "double counting"); (3) the Parole Commission violated Petitioner's due process rights when it failed to issue a memorandum opinion to set forth the reasons for its disagreement with the hearing examiner's recommendation; and (4) Petitioner's due process rights were violated when the National Appeals Board relied upon an insufficient record when affirming the decision of the Parole Commission.

In response (Doc. 16), Respondents argued: (1) the Parole Commission was not bound by the hearing examiner's recommendation and that the determination that the aggravating factors outweighed the favorable information does

not render their decision arbitrary and capricious or without a rational basis; (2) the Parole Commission could not effectively "double count" (or make a decision "outside of the parole guidelines") as Petitioner had a Severity Category Eight rating, which is an open-ended period for release on parole and therefore, the Commission cannot exceed the guidelines; and (3) Petitioner's due process rights were not violated as the Commission gave adequate reasons for their decision to deny him parole in accordance with procedure, but in any event, a prisoner may not enforce against the Commission any provision in its internal procedures manual.

Finding Respondents' arguments prevailing, the R&R (Doc. 32) held that the Parole Commission's decision was rational and properly articulated on the record. Thus, the R&R further found that the National Appeals Board did not rely upon the Commission's decision in violation of Petitioner due process rights.

### III. Discussion

Petitioner now objects to the following portions of the R&R:

(1)   The holding that the Parole Commission's 2006 decision "was properly articulated and rational, based on the record" (Doc. 35, pp. 1-2 and n.1, citing Doc. 32 - R&R - pp. 6-11); and

(2)   The statement that the Commission's failure to adequately explain why it did not following the hearing examiner panel was "immaterial" (*Id.* at 2, citing Doc. 32, p. 7);

Petitioner also asserts that the R&R misapprehends the facts and misapplies the law

(*Id*. at p. 3).⁷  The Court will address each objection, in turn, conducting a *de novo* review of the germane issues.

## A.     The Parole Commission's 2006 Decision Regarding Petitioner

Petitioner objects to the R&R's holding that the Parole Commission's decision in 2006 – which disagreed with the hearing examiner's recommendation to parole Petitioner after 26 years of imprisonment – was not arbitrary and capricious, but instead, was rationally based and properly articulated.  As the R&R correctly stated, on habeas review, the district court is limited to determining whether the Parole Commission's decision constitutes an abuse of discretion.  **Thompson v. Veach, 501 F.3d 832, 835 (7th Cir. 2007) (citing Solomon v. Elsea, 676 F.2d 282, 290 (7th Cir. 1982))**.  The Court need only find a rational basis in the record to support the Commission's conclusions embodied in its stated reasons.  **Id.**

Petitioner argues the decision was arbitrary and capricious in that the Parole Commission focused solely on his past conduct and the nature of the offense (which he contends was already counted in determining his Severity Category Eight rating), all of which occurred nearly sixteen years before the 2006 hearing, while ignoring the "mountain of positive evidence" regarding his accomplishments and

---

⁷ Along these lines, Petitioner takes particular umbrage with the R&R's statement that he believes his good behavior and accomplishments since incarceration should outweigh the severity of his offense and any other negatives (Doc. 35, p. 2, n.2, citing Doc. 32, p. 7).  Petitioner contends that he "has taken full responsibility for his crime and does not attempt to diminish its seriousness in anyway (sic.).  Petitioner continues, seeking to clarify "that he has been rehabilitated and it is arbitrary and capricious to deny him parole solely on the basis of the offense severity" (*Id*.).  The Court notes Petitioner's assertion and for the purposes of this Order, will endeavor not to speculate on the Petitioner's feelings regarding either his remorse for his prior actions or his various accomplishments since incarceration.

personal growth since that time (Doc. 2, p. 8).  In other words, Petitioner does not believe it was rational for the Parole Commission to deny parole based on the aggravating factors of the crime in 2006, as it also relied upon those factors when it initially denied parole in 1990 (*Id*. at pp. 8-9).  Petitioner also argues that the Parole Commission abused its discretion by improperly "double counting" the aggravating factors to exceed the lower limit of his applicable guideline category by more than 48 months, as they had already been used to establish his Severity Category Eight rating (*Id*. at pp 9-10).  Additionally, Petitioner asserts that the Commission failed to comply with its own procedures in failing to prepare a report setting forth a detailed explanation of why it disagreed with the hearing examiner's recommendation of parole (*Id*. at p. 10).  In sum, Petitioner believes the Commission "has over emphasized [P]etitioner's offense and closed its eyes to the overwhelming evidence that he has been rehabilitated" (Doc. 35, p. 2).

A recommendation of parole made by a hearing examiner (or a hearing examination panel), only becomes effective if approved by the Regional Commissioner.  **See 28 C.F.R. § 2.23(d)**.  However, by regulation, the Commissioner can disagree with the examiner's recommendation and deny parole upon the votes of two concurring Commissioners. **28 C.F.R. § 2.24(a)**.  That is what occurred here, so the Court must look to whether the Commission abused its discretion by not having a rational basis for its denial of parole.

While the Commission must consider the evidence before it, it is not an abuse of discretion to deny parole based on the aggravating offense factors of the

crime committed outweigh Petitioner's subsequent good behavior and other academic accomplishments. ***See, e.g.*, *Solomon*, 676 F.2d at 287 (finding that the magnitude of the severity of the offense provided good cause to deny parole despite the parole guidelines or any abundance of favorable information); *see also Slader v. Pitzer*, 107 F.3d 1243, 1249 (7th Cir. 1997) (finding that the Commission's consideration that the crime of murder involved premeditation and cold blood to support its denial of parole provided rational basis even in light of the mitigating evidence considered)**. In this case, the Commission denied parole because of the aggravating factors of the crime, which were that Petitioner "committed an unprovoked murder of a victim, the victim was stabbed approximately 15 times and her head was beaten. Other abrasions were found on the victim's nude body, including indication of [Petitioner's] heel mark on her side" (Doc. 2, Ex. C, p. 1). There is evidence that the Commission also considered Petitioner's favorable evidence, in that it also stated that it had reached its conclusion "[a]fter review of all relevant factors and information presented . . ." (*Id*.). In fact, a fifteen-year reconsideration hearing is a *de novo* hearing, allowing for a "full reassessment of the case" (Doc. 2, Ex. D, citing **28 C.F.R. §§ 2.13 & 2.14(c)**). Again, it is not the Court's job, upon habeas review, to re-weigh the evidence presented to the Commission, but merely to determine whether the denial of parole was supported by a rational basis. Accordingly, it hereby finds that the Commission did, in fact, have a rational basis supporting its conclusion that Petitioner should be

Page 12 of 18

denied parole in its 2006 review of the hearing examiner's recommendation.

However, the Court must also examine Petitioner's argument that the Commission improperly "double counted" when it decided to continue Petitioner's sentence beyond his applicable parole guideline. The Commission's 2006 decision not only denied parole, but found that based on the aggravating factors of Petitioner's crime (stated in the paragraph above), that "exceeding the lower limit of the applicable guideline category by more than 48 months [was] warranted" (*Id.*). Petitioner believes this to be improper, as he contends the aggravating factors were already taken into account when placing him in a Severity Category Eight, which is the highest severity rating.

First, as the Government states, a Category Eight Severity rating has no specified upper limits "due to the extreme variability of the cases within this category." **28 C.F.R. § 2.20 n.1**. Therefore, the Parole Commission's decision was not outside of the guidelines. Second, the Court does not find "double counting" has occurred. During his initial parole hearing in 1990, the Commission rated Petitioner's offense behavior as a Severity Category Eight "because it involved kidnaping with murder of the victim" (Doc. 2, Ex. A, p. 1). It decided to increase the guideline range because of the circumstances surrounding the victim's murder: that she was stabbed 15 times, was abandoned in the nude, and exhibited head wounds and what appeared to be Petitioner's heel mark on her side. These aspects of the victim's murder are not the same as the murder itself. Thus, it appears that the crime of kidnaping with murder itself placed Petitioner into the Severity Category

Eight. Therefore it was *how* Petitioner committed the crime that gave rise to the Commission's decision to exceed the lower limit of the applicable guideline by 48 months. Hence, the Court does not find the Commission improperly "double counted."

Petitioner also argues that the Parole Commission violated his due process rights when it failed to properly set forth reasons for the denial of parole in a memorandum. Petitioner cites to the Commission's Rules and Procedural Manual, § 2.24-02 (Doc. 3, p. 5), which states that if the Commissioner declines the hearing examiner's recommendation of parole he should "prepare[] a memorandum (with reasons in case of parole denial) to the National Commissioners explaining the reasons for the disagreement with the panel recommendation. Also, the Regional Commissioner prepares a second order with his vote and attaches this order to the memorandum." **See Rules and Procedural Manual, § 2.24-02**.[8] Petitioner contends that this procedural "safeguard" was not followed because the Commission failed to explain the reasons for the disagreement with the hearing examiner's recommendation, as there is no indication the decision considered all the relevant factors. Therefore, Petitioner concludes that the Commission's failure to comport with its own established policies and procedures violated due process.

The Court finds that because parole decisions are "committed to agency discretion" under **18 U.S.C. § 4218(d)**, any failure on the Commission's part to

---

[8] The Manual is accessible online at:
http://www.usdoj.gov/uspc/rules_procedures/rulesmanual.htm

completely follow § 2.24-02 of its Rules and Procedural Manual does not entitle Petitioner to habeas relief absent a violation of some constitutional provision. **Turner v. Henman, 829 F.2d 612, 614 (7th Cir. 1987) (citation omitted)**. Regarding Petitioner's due process violation argument, the Seventh Circuit explained that "[a] violation of the Commission's rules authorizes [habeas] relief . . . only if the rules are themselves essential components of due process of law – that is, if the procedures actually used by the Commission violated the Constitution." **Id.** Here, the Court finds the cited procedural provision is not in itself, a violation of the Constitution. Therefore, no due process violation has occurred for any failure by the Commission to specifically follow its procedure regarding the denial of a parole recommendation. Moreover, the Court does not find that the Commission did, in fact, fail to set forth the reasons for its denial of the parole recommendation. Rather, it stated that its denial was based on the aggravating factors: "You committed an unprovoked murder of a victim, the victim was stabbed approximately 15 times and her head was beaten. Other abrasions were found on the victim's nude body, including indication of your heel mark on her side."

As for Petitioner's argument that the Commission did not fully consider all the evidence (including his favorable evidence), the Court finds otherwise, in that the Commission stated that its decision was being made, "[a]fter review of all relevant factors and information presented." This implies that the Commission had, in fact, considered any favorable evidence and apparently found it did not outweigh the aggravating factors to warrant parole. In light of a similar argument, the Seventh

Circuit applied the following standard:

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the (Commission's) decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision . . . and the essential facts upon which the (Commission's) inferences are based.

**Solmon**, 676 F.2d at 286 (citing *United States ex rel. Scott v. Ill. Parole and Pardon Board*, 669 F.2d 1185, 1191 (7th Cir. 1982)). The Seventh Circuit in **Solomon** found the following statement of reasons denying the petitioner's parole request to sufficiently satisfy the minimum due process requirements:

> Your offense behavior has been rated as very high severity because of your involvement in the importation and distribution of large quantities of hashish and a currency violation. You have a salient factor score of 10 (see attached sheet). You have been in custody a total of 29 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 24-36 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense behavior involved the following aggravating factors: It was of unusual magnitude in that the hashish was valued in excess of $1,000,000 and was part of an international smuggling operation. As required by law, you have also been scheduled for a Statutory Interim Hearing during August 1981.

*Id.* Thus, based on comparison, the Court finds the Commission's statement of reasons regarding the denial of Petitioner's parole recommendation to also sufficient satisfy the minimum due process requirements, as "the Commission is neither required to state every factor upon which it relied in reaching its decision nor is it

required to state that it reviewed any particular type of documentation." **Slader, 107 F.3d at 1249 (citing the legislative history to 18 U.S.C. § 4207)**.

Petitioner's objection to the R&R's holding that the Parole Commission's denial of the recommendation for parole was rationale and well-articulated is thus overruled.

**B.    The R&R's Finding that Any Failure of the Commission to Explain Its Reasons for the Denial Was "Immaterial"**

Petitioner also objects to the R&R's statement that "any failure to adequately explain why the recommendation was not followed is immaterial. The Commission's failure to follow its own administrative rules and regulations does not entitle a prisoner to habeas relief, absent a constitutional violation" (Doc. 32, p. 7, citing **Turner, 829 F.2d at 614; Edmundson v. Turner, 954 F.2d 510, 514 (8th Cir. 1992)**). Again, Petitioner asserts that he has been denied due process by the Commission's failure to follow its own policies and procedures set forth in the *Rules and Procedure Manual*, § 2.24-02. However, for the reasons already discussed by the Court *supra*, Petitioner's objection is not well-taken and must be overruled, because the Commission did, in fact, include written reasons explaining its denial of the recommendation for parole and even if the procedure was not exactly followed, it did not create a due process violation.

## IV. Conclusion

The Court overrules Petitioner's Objections (Doc. 35) and hereby **ADOPTS** the R&R (Doc. 32). Accordingly, petitioner Nathaniel Green's Petition for Writ of Habeas Corpus pursuant to **28 U.S.C. § 2241** (Doc. 2) is hereby **DENIED**. Judgment to enter accordingly.

**IT IS SO ORDERED**.

Signed this 2nd day of March, 2010.

/s/  David R. Herndon
**Chief Judge**
**United States District Court**